UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CE BRAND HOLDINGS PTY LTD, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LUCKSTARS TECHNOLOGY LIMITED, ) <br> et al., ) <br> ) <br> Defendant. ) | Case No. 25-cv-15664 <br><br> Judge Sharon Johnson Coleman |

### ORDER

Before the Court is Plaintiff's motion for a temporary restraining order (TRO) and to file the motion under seal [10]. Plaintiff's request to file under seal is granted; however, the request for a TRO is denied without prejudice.

### DISCUSSION

**I.  Product Background and Concerns about Illegal Use and Marketing**

This case concerns Defendants' alleged infringement of Plaintiff's intellectual property rights for two brands of nitrous oxide ($N_2O$) aerosol canisters, "Miami Magic" and "SupremeWhip." Nitrous oxide canisters like those sold by Plaintiff are used by home and professional chefs as a propellant for making whipped cream. *See* dkt. 3-1, ex. B. However, nitrous oxide is also the "laughing gas" anesthetic commonly used by dentists, and use of $N_2O$ cannisters as a recreational inhalant drug (often called "whippets") has become increasingly common in recent years. *See* Alexandra Benisek & Kathryn Whitbourne, "Whippets: What You Need to Know About These Inhalant Drugs," https://www.webmd.com/mental-health/addiction/what-are-whippets (May 17, 2024).

Nitrous oxide is not regulated as a drug by the FDA when it is marketed as a food product. 21 CFR 184.1545(c). However, marketing nitrous oxide as a food product in a manner designed to

appeal to young adults—the demographic most likely to abuse $N_2O$, and to be harmed by such abuse—is at least suspect under the Federal Food, Drug, and Cosmetic Act. 21 U.S.C § 331; *see also* 21 CFR 184.1(c). Here, Plaintiff offers two brands of $N_2O$ containers, "SupremeWhip" and "Miami Magic." While the SupremeWhip brand (which Plaintiff's counsel described as "sober") features a relatively plain design, the Miami Magic brand features a design that seems clearly designed to evoke (or, perhaps, to rip off) the cover art associated with the Grand Theft Auto series of videogames. *See* dkt. 3-1 at *15–17 [hereinafter "Compl."].

The Court also observes that counsel for Plaintiff misrepresented the product at a hearing on February 6, 2026. When asked what the product was, counsel responded that Plaintiff sells "whipped cream." But that is incorrect. As Plaintiff's own exhibits confirm, the product is a canister of nitrous oxide. *See* Compl., ex. B, D. Such canisters can be used to *make* whipped cream, but they are not themselves canisters of whipped cream. Counsel also admitted at the hearing that the Miami Magic brand is designed to appeal to young adults. Given the potential for abuse of nitrous oxide, the Court believes that extreme caution is warranted when approaching this motion for a TRO, lest the Court inadvertently offer its protection to a product that may be marketed for an illegal purpose.

## II. Likelihood of Confusion

Aside from the Court's concern about the product itself, it is not convinced that there is a substantial likelihood of confusion between Plaintiff's products and Defendants' allegedly infringing products. As such, the Court does not believe that Plaintiff has shown a likelihood of success on the merits, a fundamental requirement of a TRO. *Valencia v. City of Springfield*, 883 F.3d 959, 965 (7th Cir. 2018). For a trademark infringement case such as this, "The 'keystone'… is 'likelihood of confusion' as to source, affiliation, connection or sponsorship of goods or services among the relevant class of customers and potential customers." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir. 1992). In the Seventh Circuit, likelihood of confusion is evaluated with a seven-factor

balancing test, of which the most important elements are the similarity of the marks, the intent of the defendants, and evidence of actual confusion. *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015).

Similarity of the marks must be evaluated by viewing the marks "as a whole." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929–931 (7th Cir. 2008). But looking at the marks as a whole, the Court is not convinced that they are similar enough that consumers are likely to be confused by the products. With respect to the Miami Magic brand, there is very little similarity. *See Fig. 1, infra.* The name of Defendants' product, "Flyd whip," is completely different from "Miami Magic," and it is rendered in a significantly different font. And while the content of the Flyd whip design may be somewhat similar to the content of the Miami Magic design, the art styles are completely distinct. It also appears that the Flyd whip design stretches around the entire cylinder, while the Miami Magic design is only located on the front half of the cylinder. These do not, to the Court's eyes, appear to be particularly similar products. *See Henri's Food Prods. Co. v. Kraft, Inc.*, 717 F.2d 352, 356 (7th Cir. 1983) (comparing the labels of competing products and finding them insufficiently similar to constitute trademark infringement).

 

*Fig. 1: Comparison of Plaintiff's Miami Magic design (left, 2021; right, 2023) with Defendants' Flyd whip design (center)*

It is a closer question whether Defendants have infringed on Plaintiff's SupremeWhip mark. However, here too the Court does not believe that Defendants' product is likely to confuse consumers, when evaluated as a whole. *See Figs. 2, 3, infra.* As an initial matter, Plaintiff's product design appears to be little more than a blue cylinder with white lettering, which may be too generic to receive trademark protection.[1] The SupremeWhip mark is registered, which grants it a presumption of validity,

---

[1] The SupremeWhip mark is registered, which grants it a presumption of validity. 15 U.S.C. § 1115(a). However, that presumption may be rebutted, and generic marks are not afforded protection under the Lanham Act. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768–69 (1992); *Georgia-Pacific Consumer Prods. LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 727 (7th Cir. 2011).

– 4 –

15 U.S.C. § 1115(a); but that presumption may be rebutted, and generic marks are not afforded protection under the Lanham Act. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768–69 (1992); *Georgia-Pacific Consumer Prods. LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 727 (7th Cir. 2011). But even if Plaintiff's "SuberbWhip" product is sufficiently distinctive to receive protection under the Lanham Act, the Court finds that the overall design of Defendants' product is sufficiently different from that of Plaintiff's product to avoid the risk of confusion. Defendants' product features a design with a different font and textual graphic design; a large and distinctive circle indicating the canister's capacity at the top of the product, and which is without analog in Plaintiff's product design; as well as a sort of spiral-art ribbon design in the background, which is again without analog in Plaintiff's product design. While the names of the products are similar ("SupremeWhip" vs. "Superb Whip"), they are not identical, and Defendants' product contains a space between the words that is missing in Plaintiff's product name. Additionally, in the images submitted by Plaintiffs, the product is labeled "SupremeWhipMax," but Defendants' design has no analog to the "Max" element of Plaintiff's product design. *See Henri's Food Prods.*, 717 F.2d at 356. If the only thing under consideration was the similarity of the products' names, then Defendants' product might be said to pose a risk of consumer confusion. However, in the context of the products' respective designs as a whole, the Court does not believe that the products are sufficiently similar that consumer confusion is a real possibility. *AutoZone, Inc.*, 543 F.3d at 929–931; *Henri's Food Prods.*, 717 F.2d at 355 ("[C]omparison of the labels rather than simply the trademarks is appropriate.").




*Figure 2: Plaintiff's SupremeWhip Design*   *Figure 3: Defendants' Superb Whip design*

Plaintiff also has not significantly developed its argument in support of its contention that Defendants' products infringe on Plaintiff's right. When describing why the products are similar, Plaintiff only claims, without elaboration, that the marks "are transparently knockoffs." Dkt. 12 at *16. For the "evidence of actual confusion" factor, Plaintiff only writes "It is obvious on its face." *Id.* But such a statement does not provide any *evidence* of actual consumer confusion, which is what the factor evaluates. *Sorensen*, 792 F.3d at 731. While such evidence is not *required* to prove infringement, *id.*, it remains one of the most important factors of the analysis, *id.* at 726. In the end, Plaintiff's statements simply do not provide sufficient support for a TRO, particularly given the significant differences in the products described above. The Court does not find that these marks are similar enough to cause consumer confusion, and it does not find that Plaintiff has yet demonstrated a likelihood of success on the merits. *See Valencia*, 883 F.3d at 966. The Court therefore denies Plaintiff's request for a TRO without prejudice.

## CONCLUSION

Plaintiff's motion [10] is granted with respect to Plaintiff's request to file under seal but denied without prejudice with respect to Plaintiff's request for a temporary restraining order. Plaintiff may submit an amended complaint and/or TRO motion if it can correct the issues noted above.

**IT IS SO ORDERED.**

Date: 2/17/2026

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge